Roy K. Spencer and Cooley v. Omega Laboratories Inc. et al. Okay, Your Honor, may I speak to the court? Yes, go ahead, Mr. Spencer. This is a similar case. However, this case revolves around the family court. The family court basically did the collections and they would ship it to Omega Laboratory. However, we found out that there was issues, like on several of our own, like the caseload, we start to unravel all the issues with our testing. One, for instance, like Ms. Cooley's case, both Ms. Cooley and our case, like the chain of custody for my test, for several tests, is like, it's incomplete. As far as Ms. Cooley's test, which normally doesn't happen, like, as you can see, the July 2018 test, the collection, that was supposedly collected on, it was really collected on July 11th, but the laboratory and the collector, they both had two different dates. One collector stated that it was collected on July 10th of 2018, and the laboratory stated that it was collected on July 12th of 2018, which just goes to show you that the chain of custody wasn't sufficient. And they basically, so the collection was July 2018. They received the sample, Ms. Cooley's sample. They kept it for over a month, stating that the system was down or the court system was down and they couldn't pay the bill. And even the CO of Omega admitting that Ms. Cooley's sample was actually tested a date prior to them reporting it back on August 14, 2018. However, after that test, she did the outside test, and it came back negative for 98, which is a conflict, but they're trying to state that there was no conflict due to the fact of the levels going down, which, you know, that's false, basically because if you look at the August 14, 2018 positive test, and you look at after the fact of, I think it was August 17th of 2018, you can see that the second test goes back 90 days. Here it is on August 14, 2018. They're stating that it's positive for 90 days, and August 17th test of 2018 is stating that it's negative for 90 days. So that was one of the issues, and they failed to even rebut the issue. And furthermore, you have the expert witness that confirmed the test as negative. He's saying something else. He's saying that there was an issue with her name. That's the reason why the test was held for so long. So you have that conflict. They never rebutted it. And then, as far as, they stated that even Pastanik versus LabCorp, that case law is only surrounded about, I mean, only surrounded around DOT and FAA regulations. It has nothing to do with tests on the outside. So that was the only reason why that case law basically got rejected, but this wasn't one of those cases. This wasn't a DOT, nor was this an FAA regulation test. This was a private. You need to finish the sentence. Go ahead, Mr. Smith. I didn't mean to cut you off. This was a private test. So that case law is improper to basically to this case, which this case is something totally different. And as far as the other case law with them stating that a negative test, Tilsen versus Dissel, that case law was surrounded around a positive marijuana test. This is a hair follicle test, cocaine hair follicle test. That's 90 days. There was no case law that they used to compare a positive and a negative test. All right. All right. Thank you again, Mr. Spencer. We'll now hear from Ms. Caldwell. Thank you. May it please the court. I obviously represent Omega Laboratories and the individual defendants, all of whom are employees of Omega. As you heard in the previous case, after appellant's daughter tested positive for cocaine in 2017, both the appellants were required to undergo drug testing that was ordered by Suffolk County CPS. Some, but not all of the drug testing was hair, but the hair testing was tested by my client Omega. Multiple times, as you've heard in the LabCorp matter, they tested positive for cocaine at a variety of levels. And the allegations that are in the complaint, that even the negative test, the private one, wasn't drug free. It just was below the cutoff. Now, and of course, we've heard that they were positive when they were tested by another laboratory, LabCorp, and appellants have disputed all positive tests, including their daughter's positive urine test for cocaine. We have five lawsuits, obviously two being considered here. This is a negligence claim, and we were thinking it follows squarely within Pasternak versus LabCorp, which defines the duty of a drug testing laboratory. That case was not limited to DOT. That was, it rose the context of a DOT, but the duties alleged in Pasternak were beyond DOT requirements. And they recognize that the duty on the part of a drug testing laboratory is limited. The circumstances, the failure to adhere to professionally recognized standards of care in the testing of the sample, not the collection, not the any discrepancy in the collection and the chain of custody, very, very limited by the Court of Appeals in New York. So let me, the, sorry, if I could just ask, I'm trying to figure out what, what the minimum pleading is that would be required to actually pursue, I guess it's not really a Pasternak claim, it's a claim, Leonard, I think, the case before Pasternak, right? Landon? Yeah, thank you. If, for example, a, an individual gets a simultaneous or contemporaneous test from a different lab that's negative and that has different results, is that enough at the pleading stage to raise an inference that the positive, the lab that generated the positive test did so, departed from the sort of professional standards in the testing of the sample? Subject, of course, to discovery to figure out what? Your Honor, I would urge not. And this comes to the scientific accuracy in testing. This comes up across the country, as Mr. Sonner pointed out. You could have two urine tests that could have different hydration levels. Hair, because it's not a homogeneous, one strand of hair, frankly, contains different amounts of drugs than another strand of hair. And the fact that you have a positive and a negative, particularly since they're designated cut-offs, does not in any way impugn the scientific integrity of the testing of the sample. Because that's, that's in there. So, with all due respect, Your Honor, we would say that, no, that would not lead to scientific. And what has happened in this case, we have a lot of allegations. As you've read the complaint, et cetera, and Judge Azraq's 51-page order, the bottom line is, what do those relate to? Allegations of what the collection site, whether they mislabeled the chain of custody, whether there was a delay. Without any inference that those would affect the scientific integrity of the testing of the samples. I understand. So, let me, let me, let me throw another hypothetical. You know, I understand the sort of process-related allegations. I'm really trying to figure out whether this cause of action is a, is a paper tiger, or whether there's really a circumstance in which an individual who wasn't physically in the lab observing the, the scientific testing would ever be able to get past the pleading stage. And so, let, let me give you a different alternative. Somebody says, I have never in my life ingested that drug. There is no way that a properly conducted test could have generated a positive test. Is that enough to, you know, viewing the facts in the light most favorable to the plaintiff, get past the pleading stage and get the plaintiff to discovery, to sort of look under the hood? Your Honor, I would actually urge you that Sixth Circuit has expressly considered exactly that question. Say Graves versus Lab I. I didn't cite it because I didn't think it was relevant, but it absolutely goes to the idea that a claim that I didn't use drug is insufficient. And that was a motion to dismiss case, to kind of move beyond it. That that simply, that allegation, which is made, frankly, almost in every case I deal with, is not sufficient. You ask, if you want my opinion of what might get there, maybe that's to your Honor's question. Yeah. There's litigation packets. And Mr. Spencer actually referred to them. He received all of them from Omega, pointing out in the testing process where everything is documented under chain of custody, those sorts of claims. And he had them long before the first lawsuit was filed. So those are the sorts of things that have been looked at. They're simply absent in this case. Thank you. Okay. Thank you both. We'll reserve decision on this case as well. Have a good day.